UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC W. B., an Individual, | Case No.: 5:20-00703 ADS |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.   **INTRODUCTION**

Plaintiff Eric W. B.[1] ("Plaintiff") challenges Defendant Andrew M. Saul,

Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial

of his application for a period of disability and disability insurance benefits ("DIB").  For

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II.      FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal.  Prior to filing his application for disability insurance benefits, Plaintiff last worked in August 2016 as a carpenter.  (Administrative Record "AR" 40, 182-87 and 204).  Plaintiff stopped working in August because he broke his ankle and had to have surgery.  (AR 42, 394).  While he was still recovering from his ankle surgery, he experienced a vertigo-like episode and went to the emergency room on November 7, 2016.  (22, 42, 394).  A magnetic resonance image ("MRI") scan of Plaintiff's brain was taken on this date, which showed multiple bilateral periventricular white matter signals consistent with multiple sclerosis.  (AR 22, 394).  Plaintiff was referred to a neurologist and multiple sclerosis specialist.  (Id.).  Plaintiff's disability onset date is November 7, 2016.  (AR 179).

Plaintiff's claim states that he filed for disability due to complications from multiple sclerosis ("MS"), listing the following: "dysphasia, blurred/double vision, muscle rigidity/weakness, poor balance/coordination, inability to control right side of body (leg/arm)."  (AR 70-71).  His medical records and testimony at the Administrative hearing, as well as the testimony of third parties, make multiple references to complications to Plaintiff's right upper extremity he is suffering due to MS.  At the hearing, Plaintiff testified that he experiences weakness on his entire right side, both the upper and lower extremities (AR 45); that it is very difficult for him to hold anything, like a cell phone or pen, as they tend to just fall out, which he says occurs fairly often (AR 46-47); that the more he uses his right hand throughout the day, the weaker it

becomes and as this happens it feels heavier (AR 50); that he does not shave or cook as he cannot control his right hand (AR 53); and that he can only use his right hand for grabbing, gripping, grasping and fingering things for about 20 minutes before his arm feels weak and he has to stop and rest it (AR 54-55). Plaintiff's medical records also reflect his statements of complications with his right upper extremity, including "impaired coordination discovered by attempts to write" (AR 394) and "difficulty grasping items, unable to shave" (AR 437). Third party statements submitted in support of Plaintiff's claims also reference Plaintiff's difficulty with his right upper extremity: "his hands shake" (AR 294, 297); "things fall out of his hands" (AR 249); "can't shave, hands are not steady" (AR 250). Furthermore, on Plaintiff's reconsideration request of his denied claim, Plaintiff notes that his MS was getting worse and that he "can't hold items securely in his right hand." (AR 241).

A vocational expert, Linda Ferra, testified at the hearing that if Plaintiff's assessed residual functional capacity included a limitation to "occasional handling and fingering" that would eliminate the jobs she had assessed as possible, namely document preparer, order clerk and charge account clerk. (AR 62-63).

III. **PROCEEDINGS BELOW**

A. **Procedural History**

Plaintiff filed a claim for Title II social security benefits on November 8, 2016, alleging disability beginning November 7, 2016. (AR 83, 179). Plaintiff's DIB application was denied initially on June 15, 2017 (AR 100-03), and upon reconsideration on September 20, 2017 (AR 105-09). A hearing was held before ALJ Clary Simmonds on May 14, 2019. (AR 32-69). Plaintiff, represented by counsel,

appeared and testified at the hearing.  Also appearing and testifying at the hearing was vocational expert Linda Ferra.  (Id.).

On June 4, 2019, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[2]  (AR 10-31).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on March 9, 2020.  (AR 1-6).  Plaintiff then filed this action in District Court on April 6, 2020, challenging the ALJ's decision.  [Docket ("Dkt.") No. 1].

On September 17, 2020, Defendant filed an Answer, as well as a copy of the Certified Administrative Record.  [Dkt. Nos. 17, 18].  The parties filed a Joint Stipulation on December 17, 2020.  [Dkt. No. 19].  The case is ready for decision.[3]

**B.  <u>Summary of ALJ Decision After Hearing</u>**

In the ALJ's decision of June 4, 2019 (AR 13-26), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[4]  20 C.F.R. § 404.1520(a)(4).  At **step one**, the ALJ found that

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment.  [Dkt. Nos. 11, 12].

[4] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If

Plaintiff had not been engaged in substantial gainful activity during the period from his alleged onset date of November 7, 2016 through his date last insured of September 30, 2017. (AR 15). At **step two**, the ALJ found that Plaintiff had the following severe impairment: multiple sclerosis. (AR 16-18). At **step three**, the ALJ found that, through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 18).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[5] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[6] except:

> [he] can lift, carry, push and/or pull up to 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk for up to two hours out of an eight-hour workday with regular breaks and he can sit for six hours out of an eight-hour workday with regular breaks. He can occasionally climb ramps and stairs; but he can never climb ladders, ropes or scaffolds. He can frequently balance; and he can occasionally stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to extreme heat, wetness, vibration or humidity and should always avoid uneven terrain and hazards such as moving machinery or unprotected heights. He may use an assistive device to ambulate.

---

not, the claimant is disabled. <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

[5] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. <u>See</u> 20 C.F.R. § 404.1545(a)(1).

[6] "Sedentary work" is:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); <u>see also</u> <u>Casey H. v. Berryhill</u>, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

(AR 18-19).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a carpenter and a warehouse material handler. (AR 24). At **step five**, considering Plaintiff's age, education, work experience, RFC and the vocational expert's testimony, the ALJ found that there are "jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" such as: document preparer, order clerk and charge account clerk. (AR 25-26). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 7, 2016, the alleged onset date, through September 30, 2017, the date last insured. (AR 26).

## IV. <u>ANALYSIS</u>

### A. <u>Issues on Appeal</u>

Plaintiff raises two issues for review: (1) whether the ALJ properly evaluated/considered the medical evidence of record; and (2) whether the ALJ properly evaluated Plaintiff's credibility and subjective complaints. [Dkt. No. 19 (Joint Stipulation), p. 3]. For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to properly consider both the medical evidence of record and his subjective complaints in assessing Plaintiff's RFC, and remands on that ground.

### B. <u>Standard of Review</u>

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014)

(District Court's review is limited to only grounds relied upon by ALJ) (citing <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 458-59 (9th Cir. 2001).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

  "[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)); <u>see</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

**C.**  __The ALJ Failed to Properly Evaluate the Medical Evidence and__
__Plaintiff's Subjective Complaints__

Plaintiff contends that the ALJ failed to give appropriate weight to significant medical evidence of record supporting Plaintiff's claim of disability, as well as failed to properly evaluate his subjective complaints.  The Court agrees and finds that the ALJ failed to properly evaluate or consider Plaintiff's limitations in his upper right extremity, as noted in the medical records and testified to by Plaintiff and third parties.

A residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1).  In determining a claimant's RFC, an ALJ must consider all relevant evidence in the case record.  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017).  "The ALJ must consider both the medical evidence and 'descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by' the claimant, family, friends, and other people. [20 C.F.R.§ 416.945(a)(3)]  The RFC assessment must '[c]ontain a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms* and the adjudicator's personal observations, if appropriate.' [SSR 96–8p, 61 Fed. Reg. at 34478 (emphasis added).]  In other words, the ALJ must take 'the claimant's subjective experiences of pain' into account when determining the RFC.  [Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014)(emphasis added)]."  Laborin, 867 F.3d at 1153.

As set forth above, Plaintiff's medical records and testimony make numerous references to limitations in his right upper extremity, including that he experiences

weakness on his entire right side, both the upper and lower extremities (AR 45); that it is very difficult for him to hold anything, like a cell phone or pen, as they tend to just fall out, which he says occurs fairly often (AR 46-47); that the more he uses his right hand throughout the day, the weaker it becomes and as this happens it feels heavier (AR 50); that he does not shave or cook as he cannot control his right hand (AR 53); that he can only use his right hand for grabbing, gripping, grasping and fingering things for about 20 minutes before his arm feels weak and he has to stop and rest it (AR 54-55); medical records noting "impaired coordination discovered by attempts to write" (AR 394) and medical records noting "difficulty grasping items, unable to shave" (AR 437). Furthermore, third party statements submitted in support of Plaintiff's claims also reference Plaintiff's difficulty with his right upper extremity: "his hands shake" (AR 294, 297); "things fall out of his hands" (AR 249); "can't shave, hands are not steady" (AR 250).

The ALJ was required to consider this evidence from the medical records, third party statements and Plaintiff's own testimony in assessing Plaintiff's RFC. See Robbins v. Soc. Sec. Admin., 466 F.3d at 883; Laborin v. Berryhill, 867 F.3d at 1153. The ALJ's decision includes no discussion of Plaintiff's purported upper extremity limitations. (AR 13-26). Indeed, no discussion or reference is made as to why an exception or accommodation for the upper extremity limitation is not a part of Plaintiff's assessed RFC. This lack of discussion or analysis of the upper extremity limitation by the ALJ is particularly problematic, given that the vocational expert, Linda Ferra, testified at the hearing that if Plaintiff's assessed RFC included a limitation to "occasional handling and fingering" that would eliminate the jobs she had assessed as possible, namely document preparer, order clerk and charge account clerk. (AR 62-63). Accordingly, the Court

finds that the ALJ committed legal error in failing to address Plaintiff's allegations of right upper extremity limitations.

### D.    <u>The Court Declines to Address Plaintiff's Remaining Arguments</u>

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. See <u>Hiler v. Astrue</u>, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); <u>see also</u> <u>Alderman v. Colvin</u>, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); <u>Augustine ex rel.</u> <u>Ramirez v. Astrue</u>, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See <u>Brown-Hunter</u>, 806 F.3d at 495; <u>Bunnell</u>, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E.    <u>Remand For Further Administrative Proceedings</u>

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. See <u>Brown-Hunter</u>, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). The Court finds that the ALJ failed to properly evaluate Plaintiff's asserted upper extremity limitations. On remand, the ALJ shall properly review and evaluate evidence of Plaintiff's upper extremity limitations and reassess

Plaintiff's RFC.  The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

**V.      ORDER**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.  Judgement shall be entered accordingly.


DATE: June 30, 2021


_____/s/ Autumn D. Spaeth_____
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge